## UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| ALEXIS MULLEN, NICHOLAS YEOMELAKIS, and THOMAS MACNISH, on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>     v.<br><br>SYNIVERSE CORPORATION,<br><br>                                   Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Alexis Mullen, Nicholas Yeomelakis, and Thomas Macnish ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), brings this class action against Syniverse Corporation ("Syniverse" or "Defendant"). Plaintiffs make the following allegations, except as to allegations specifically pertaining to Plaintiffs, upon information and belief based upon, *inter alia*, the investigation of counsel, and review of public documents.

### INTRODUCTION

1.      This is a class action on behalf of millions of individuals whose sensitive personal identifying information was compromised in a cybersecurity breach of Syniverse, which was disclosed on or about September 27, 2021.

2.      Syniverse failed to properly secure and safeguard private and personally identifiable information that it stored on and/or processed through its Electronic Data Transfer (EDT) environment, including call records and message data, such as call length and cost, caller

and receiver numbers and locations, as well as the content of SMS text messages (collectively, "personally identifiable information" or "PII").

      3.      According to its website, Syniverse processes 740 billion messages every year.[1]

      4.      Syniverse claims that it "fuels mobile communications for nearly every person and device in the world."[2] Syniverse is a critical part of the global telecommunications infrastructure used by major cell service providers in the United States and worldwide.

      5.      Syniverse promises security for its customers and their users' data. According to its website, Syniverse provides:

> **Unparalleled protection for your mobile connectivity.** Security is at our core. That's why we built a global network to bypass threats from the public internet. So, you can trust that your customers and your business are protected when they're connected.
>
> **Securely connect and protect devices anywhere on Earth.** Our suite of mobile security solutions provides secure connectivity with the reach of mobile, the flexibility of software-defined networks, and the security of a private network.
>
> That empowers you to offer customers wireless and cloud connectivity access for enterprise and IoT applications. And it's all backed by our extensive knowledge and expertise in the next evolution of network security.[3]

      6.      Syniverse's Privacy Notice similarly claims that "Syniverse does not disclose, give, sell or transfer any personal information about… end-users of its Services, except as explained below or required for law enforcement or by statute."[4] That Privacy Notice does not reference disclosure to unauthorized users of its networks.

---

[1] https://www.syniverse.com/products/operator-messaging

[2] https://www.syniverse.com/news-and-events/syniverse-merger-with-m3-brigade-acquisition-ii-corp

[3] https://www.syniverse.com/product-categories/mobile-security

[4] https://www.syniverse.com/privacy-notice

7.     On September 27, 2021, M3-Brigade Acquisition II ("M3 Brigade"), which has agreed to merge with Syniverse, informed the Securities and Exchange Commission ("SEC") that an unauthorized actor had exploited a vulnerability in Syniverse's systems (the "Data Breach").

8.     Syniverse revealed that, during the Data Breach, one or more unauthorized actors had access to Syniverse's systems beginning in May 2016, and that the company did not discover the breach until May 2021. Despite knowing of the Data Breach since May 2021, Syniverse did not disclose it until four months later, and did so then only for the purpose of facilitating a corporate merger. The transaction implies an initial enterprise value for Syniverse of $2.85 billion

9.     By obtaining, collecting, processing, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Syniverse assumed legal and equitable duties to those individuals, including the duty to protect and safeguard their PII.

10.     This PII was compromised due to Syniverse's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiffs and Class Members. Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Syniverse's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of its inadequate information security practices; and (iii) avoid sharing the PII of Plaintiffs and Class Members without adequate safeguards. Syniverse's conduct was tortious and violates the common law as well as various federal and state statutes.

11.     Plaintiffs and Class Members have suffered injury as a result of Syniverse's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or

unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and significantly (iv) the continued and increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII. Plaintiffs have also suffered nominal damages.

12.     Syniverse disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

13.     Plaintiff Alexis Mullen is a citizen of Pennsylvania and resides in Philadelphia, Pennsylvania. During the period relevant to this Complaint, Ms. Mullen has been a cellular phone customer of Verizon and sent and received text messages.

14.     Plaintiff Nicholas Yeomelakis is a citizen of Massachusetts, and resides in Charlestown, Massachusetts. During the period relevant to this Complaint, Mr. Yeomelakis has been a cellular phone customer of AT&T and sent and received text messages.

15.    Plaintiff Thomas Macnish is a citizen of Florida and resides in Pompano Beach, Florida. During the period relevant to this Complaint, Mr. Macnish has been a cellular phone customer of T-Mobile and sent and received text messages.

16.    Defendant Syniverse Corporation is a Delaware corporation with its principal place of business in Tampa, Florida.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). If a class is certified in this action, the amount in controversy will exceed $5,000,000.00, exclusive of interest and costs. There are more than 100 members in the proposed class, and at least one member of the proposed class is a citizen of a state different from Syniverse.

18.    This Court has personal jurisdiction over Syniverse because it conducts business in the State of Florida, purposefully directs or directed its actions toward Florida, and/or has the requisite minimum contacts with Florida necessary to permit the Court to exercise jurisdiction. This Court also has personal jurisdiction over Syniverse because Syniverse's conduct caused harm to thousands of Class members residing in Florida.

19.    Venue is also proper within this District because, pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District. Syniverse's conduct caused harm to thousands of Class members residing in Florida.

**FACTUAL ALLEGATIONS**

**A.  Syniverse Knew the Risk that Cybercriminals Posed to its Data.**

20.    Syniverse was originally founded as a GTE business unit in 1987 under the name "GTE Telecommunication Services Inc."

5

21.     After several corporate transactions and name changes, Syniverse was privatized after being acquired by an affiliate of The Carlyle Group for approximately $2.6 billion in 2011.

22.     Syniverse advertises itself as "The world's most connected company™"[5], and claims to provide "unified, mission-critical platforms enabling seamless interoperability across the mobile ecosystem" for two distinct groups of customers: telecommunications carriers, and enterprises."[6]

23.     Syniverse's carrier customers are mobile network operators, mobile virtual network operators, multiple-system operators, and other communications service providers, and include some of the biggest global telecommunications carriers in the world, including AT&T, T-Mobile, Verizon, Vodafone, China Mobile, and others.

24.     Syniverse describes itself as a trusted neutral intermediary to approximately 800 carrier customers and 450 enterprises and technology providers. In a conference call about the proposed M3 Brigade acquisition of Syniverse, Syniverse's CEO, Andrew Davies, described Syniverse as follows:

> In a nutshell, Syniverse may be the most important company you've never heard of. We have had two tag lines being, we make mobile work and we're the world's most connected company. We are the trusted neutral intermediary and central nervous system that keeps devices, data traffic and messages flowing seamlessly and securely across the globe.

> If you've ever sent a message to someone with another carrier, that's Syniverse. If you've travelled overseas and made a phone call there, that's also Syniverse. If you've received a text message with any of a two-factor authentication code, an airport gate change notification, or a delivery reschedule, that's Syniverse too. Those are just a few simple illustrative examples of how we enable and drive the evolution of the entire communications ecosystem.

---

[5] https://www.syniverse.com/news-and-events/syniverse-merger-with-m3-brigade-acquisition-ii-corp

[6] *Id.*

We power the connected world and the digital economy by connecting over 8 billion devices to the mobile ecosystem allowing them to roam the globe seamlessly and securely. By connecting these 8 billion mobile devices we move nearly 3.5 exabits of data annually over our IPX network, the largest private IP network on the planet. For context that volume of data is more than 10,000 times the data stored in the entire library of Congress, and it gives us a substantial share of global IPX market.[7]

25.    Syniverse boasts providing "*secure*, global connectivity" that is the "foundation for the future of all IP-based services," and advertises "a future-proof network architecture for mobile communications providers to reduce cost, establish security and provide an optimal user experience."[8] (Emphasis added).

26.    Syniverse serves nearly every mobile network operator in the world and its solutions help carriers provide their customers with secure global connectivity and messaging. Syniverse's carrier product groups consist of Global Network Services, Outsourced Carrier Solutions, and Messaging Solutions.

27.    According to an investor presentation, over 8 billion devices are routed through Syniverse equipment.

---

[7] https://www.m3-brigade.com/sec-filings/content/0001193125-21-249348/d186797ddefa14a.htm

[8] https://www.syniverse.com/products/ipx-network (emphasis added).



**B. Syniverse Discloses the Data Breach**

28.     On September 27, 2021, M3-Brigade reported to the SEC:

Syniverse has experienced cybercriminals or others gaining unauthorized access to, or otherwise misusing, its systems to misappropriate its proprietary information and technology, interrupt its business, and/or gain unauthorized access to its or its customers' confidential information.

For example, in May 2021, Syniverse became aware of unauthorized access to its operational and information technology systems by an unknown individual or organization (the "May 2021 Incident"). Promptly upon Syniverse's detection of the unauthorized access, Syniverse launched an internal investigation, notified law enforcement, commenced remedial actions and engaged the services of specialized legal counsel and other incident response professionals. Syniverse has conducted a thorough investigation of the incident.

The results of the investigation revealed that the unauthorized access began in May 2016. Syniverse's investigation revealed that the individual or organization gained unauthorized access to databases within its network on several occasions, and that login information allowing access to or from its Electronic Data Transfer ("EDT") environment was compromised for approximately 235 of its customers. All EDT customers have been notified and have had their credentials reset or inactivated, even if their credentials were not impacted by the incident. All customers whose credentials were impacted have been notified of that circumstance.

Syniverse has notified all affected customers of this unauthorized access where contractually required, and Syniverse has concluded that no additional action, including any customer notification, is required at this time.[9]

**C. Syniverse Acquires and Stores Plaintiffs' and Class Members' PII.**

29.    Plaintiff's and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

30.    Syniverse did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing their PII to be exposed.

31.    As a condition of providing services to its customers, Syniverse requires that its customers entrust Syniverse with highly confidential PII of their users, including Plaintiffs and Class Members.

32.    At all times relevant to this Complaint, Plaintiffs and Class Members were customers of Syniverse's customers who (i) entrusted their highly confidential PII (including Social Security numbers) to cell phone providers who, in turn, entrusted that material to Syniverse and (ii) later learned that their PII was compromised in the Data Breach.

33.    By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Syniverse assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

---

[9]

https://www.sec.gov/Archives/edgar/data/1839175/000119312521284329/d234831dprem14a.htm

34.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Syniverse to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**D.  Securing PII and Preventing Breaches**

35.     Syniverse could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiffs and Class Members.

36.     Syniverse's negligence in safeguarding Plaintiffs' and Class Members' PII is bewildering given the repeated warnings and alerts about the need to protect and secure sensitive data.

37.     Despite the prevalence of public announcements of data breach and data security compromises, Syniverse failed to take appropriate steps to protect the PII of Plaintiffs and Class Members.

38.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[10] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[11]

---

[10] 17 C.F.R. § 248.201 (2013).

[11] *Id.*

39.     The ramifications of Syniverse's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

**E.  Value of Personally Identifiable Information**

40.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, one source reports that personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14]

41.     The information. compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change as text messages may include things like name, Social Security number, and date of birth.

42.     This data demands a much higher price on the black market. According to Martin

---

[12] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed October 6, 2021).

[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed October 6, 2021).

[14] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed October 6, 2021).

Walter, senior director at cybersecurity firm RedSeal, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[15]

43.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

44.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

45.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out future harm.[16]

46.     At all relevant times, Syniverse knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members and of the foreseeable consequences if the PII was compromised, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members a result.

---

[15] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed October 6, 2021).

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov/products/gao-07-737 (last accessed October 6, 2021).

12

47.     Plaintiffs and Class Members now face years of constant monitoring of their financial and personal records and loss of rights. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

48.     Syniverse was, or should have been, fully aware of the unique type and the significant volume of data on its EDT environment.

49.     To date, Syniverse has not notified impacted customers of this breach and HAS indicated no intention to do so.

50.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Syniverse's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

52.     The Class that Plaintiffs seek to represent is defined as follows:

All individuals and entities in the United States whose personal identifying information was accessed in the cybersecurity breach that Syniverse revealed to the SEC on September 27, 2021.

53.     Excluded from the Class are the following individuals and/or entities: Syniverse and Syniverse's parents, subsidiaries, affiliates, officers and directors, and any entity in which Syniverse has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards,

sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54.    Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

55.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. Millions of class members were likely impacted.

56.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Syniverse had a duty to protect the PII of Plaintiffs and Class Members.

    b.    Whether Syniverse had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties.

    c.    Whether Syniverse had a duty not to use the PII of Plaintiffs and Class Members for non-business purposes.

    d.    Whether Syniverse failed to adequately safeguard the PII of Plaintiffs and Class Members.

    e.    Whether and when Syniverse actually learned of the Data Breach.

    f.    Whether Syniverse failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

    g.    Whether Syniverse adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur.

h. Whether Syniverse engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members.

i. Whether Plaintiffs and Class Members are entitled to actual, consequential, statutory, and/or nominal damages as a result of Syniverse's wrongful conduct.

j. Whether Plaintiffs and Class Members are entitled to restitution as a result of Syniverse's wrongful conduct; and

k. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

57.     <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Syniverse's misfeasance.

58.     <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Syniverse has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Syniverse's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Syniverse's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

59.     <u>Adequacy,</u> Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained

15

counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

60.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Syniverse. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

61.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Syniverse would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

62.     The litigation of the claims brought herein is manageable. Syniverse's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

63.     Adequate notice can be given to Class Members directly using information maintained in Syniverse's records.

64.     Unless a Class-wide injunction is issued, Syniverse may continue in its failure to properly secure the PII of Class Members and may continue to act unlawfully as set forth in this Complaint.

65.     Further, Syniverse has acted or refused to act on grounds generally applicable to the and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

66.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a.   Whether Syniverse owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII.

      b.   Whether Syniverse breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII.

      c.   Whether Syniverse failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

d.   Whether an implied contract existed between Syniverse on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract.

e.   Whether Syniverse breached the implied contract.

f.   Whether Syniverse adequately and accurately informed Plaintiffs and Class Members that their PII had been compromised.

g.   Whether Syniverse failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

h.   Whether Syniverse engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i.   Whether Plaintiffs and Class Members are entitled to actual, consequential, statutory, and/or nominal damages and/or injunctive relief as a result of Syniverse's wrongful conduct.

## COUNT I
### Negligence

67.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully alleged herein.

68.   As a condition of being customers of cell phone providers, Plaintiffs utilized call and text message services that detailed sensitive information and PII.

69.   Cell phone providers entrusted their customers' PII to Syniverse on the premise and with the understanding that Syniverse would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

18

70.     Syniverse has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

71.     Syniverse knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

72.     Syniverse had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Syniverse's security protocols to ensure that the PII of Plaintiffs and the Class in Syniverse's possession was adequately secured and protected.

73.     Syniverse also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII it was no longer required to retain pursuant to regulations.

74.     Syniverse also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiffs and the Class.

75.     Syniverse's duty to use reasonable security measures arose as a result of the special relationship that existed between Syniverse and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Syniverse with their confidential PII, a necessary part of being customers of Syniverse's customers.

76.     Syniverse was subject to an "independent duty," untethered to any contract between Syniverse and Plaintiffs or the Class.

77.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Syniverse's inadequate security practices.

78.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Syniverse knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Syniverse's systems.

79.    Syniverse's own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Syniverse's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Syniverse's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiffs and the Class, including basic encryption techniques freely available to Syniverse.

80.    Plaintiffs and the Class had no ability to protect their PII that was in, and possibly remains in, Syniverse's possession.

81.    Syniverse was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

82.    Syniverse had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Class.

83.    Syniverse has admitted that the PII of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

84.     Syniverse, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Class during the time the PII was within Syniverse's possession or control.

85.     Syniverse improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

86.     Syniverse failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Class in the face of increased risk of theft.

87.     Syniverse, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former customers' PII.

88.     Syniverse breached its duty to exercise appropriate clearinghouse practices by failing to remove former customers' PII it was no longer required to retain pursuant to regulations.

89.     But for Syniverse's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the PII of Plaintiffs and the Class would not have been compromised.

90.     Plaintiffs' injuries were proximately caused by Syniverse's failure to implement security measures to protect the PII of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The PII of Plaintiffs and the Class was lost and accessed as the proximate result of Syniverse's failure to exercise reasonable care in

safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

91.     Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Syniverse, of failing to use reasonable measures to protect PII. The FTC's periodic publications and orders form part of the basis of Syniverse's duty in this regard.

92.     Syniverse violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Syniverse's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

93.     Syniverse's violation of Section 5 of the FTC Act constitutes negligence *per se.*

94.     Plaintiffs and the Class are within the class of persons that the FTC Act were intended to protect.

95.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

96.     As a direct and proximate result of Syniverse's negligence and negligence per se, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise,

publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

97.     As a direct and proximate result of Syniverse's negligence and negligence per se, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

98.     Additionally, as a direct and proximate result of Syniverse's negligence and negligence per se, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

99.     As a direct and proximate result of Syniverse's negligence and negligence per se, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
## BREACH OF CONTRACT

100.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully alleged herein.

101.     Syniverse entered into legal contracts with its cellular provider and wireless carrier customers to provide services essential to Plaintiffs and the Class regarding the use of their text messaging services. Those contracts cannot be attached to this pleading because they are within the possession of Syniverse and are protected by confidentiality and/or a protected trade secret.

102.     Plaintiffs and the Class were intended third-party beneficiaries of such contracts.

103.     Syniverse breached such contracts through the negligent, careless, reckless, and/or wrongful conduct described herein.

104.     Such breaches, namely, not safely storing and monitoring Plaintiffs' and the Class's PII, was a direct and proximate cause of damages suffered by Plaintiffs and the Class

105.     As a direct and proximate result of Syniverse's breach of contract, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued

24

risk to their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

106.    As a direct and proximate result of Syniverse's breach of contract, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

107.    Additionally, as a direct and proximate result of Syniverse's breach of contract, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

108.    As a direct and proximate result of Syniverse's breach of contract, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III
## INVASION OF PRICACY

109.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully alleged herein.

110.    Plaintiffs and the Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

111.    Syniverse owed a duty to its customers' customers, including Plaintiffs and the Class, to keep their PII contained as a part thereof, confidential.

112.    Syniverse failed to protect and released to unknown and unauthorized third parties the PII of Plaintiffs and the Class.

113.    Syniverse allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and the Class, by way of Syniverse's failure to protect the PII.

114.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and the Class is highly offensive to a reasonable person.

115.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and the Class is of no legitimate concern to the public.

116.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and the Class disclosed their PII to Syniverse as part of the current and former customers' relationship with Syniverse, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

117.    The Data Breach at the hands of Syniverse constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

118.    Syniverse acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

119.    Because Syniverse acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Class.

120.    As a proximate result of the above acts and omissions of Syniverse, the PII of Plaintiffs and the Class was disclosed to third parties without authorization, causing Plaintiffs and the Class to suffer damages.

121.    Unless and until enjoined, and restrained by order of this Court, Syniverse's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class in that the PII maintained by Syniverse can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Class. As a direct and proximate result of Syniverse's invasion of privacy, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT IV
## BREACH OF CONFIDENCE

122.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully alleged herein.

123.    At all times during Plaintiffs' and the Class's interactions with Syniverse, Syniverse was fully aware of the confidential and sensitive nature of Plaintiffs' and the Class's PII that Plaintiffs and the Class provided to Syniverse.

27

124.    As alleged herein and above, Syniverse's relationship with Plaintiffs and the Class was governed by terms and expectations that Plaintiffs' and the Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

125.    Plaintiffs and the Class provided their PII to Syniverse with the explicit and implicit understandings that Syniverse would protect and not permit the PII to be disseminated to any unauthorized third parties.

126.    Plaintiffs and the Class also provided their PII to Syniverse with the explicit and implicit understandings that Syniverse would take precautions to protect that PII from unauthorized disclosure.

127.    Syniverse voluntarily received in confidence the PII of Plaintiffs and the Class with the understanding that PII would not be disclosed or disseminated too the public or any unauthorized third parties.

128.    Due to Syniverse's failure to prevent and avoid the Data Breach from occurring, the PII of Plaintiffs and the Class was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class's confidence, and without their express permission.

129.    As a direct and proximate cause of Syniverse's actions and/or omissions, Plaintiffs and the Class have suffered damages.

130.    But for Syniverse's disclosure of Plaintiffs' and the Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and the Class's PII as well as the resulting damages.

131.    The injury and harm Plaintiffs and the Class suffered was the reasonably foreseeable result of Syniverse's unauthorized disclosure of Plaintiffs' and the Class's PII. Syniverse knew or should have known its methods of accepting and securing Plaintiffs' and the Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and the Class's PII.

132.    As a direct and proximate result of Syniverse's breach of its confidence with Plaintiffs and the Class, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax f and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII of current and former customers; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

133.    As a direct and proximate result of Syniverse's breach of its confidence with Plaintiffs and the Class, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used;

(iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Syniverse's possession and is subject to further unauthorized disclosures so long as Syniverse fails to undertake appropriate and adequate measures to protect the PII of current and former customers; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

134.    As a direct and proximate result of Syniverse's breaches of confidence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

135.    As a direct and proximate result of Syniverse's breaches of confidence, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT V**
**UNJUST ENRICHMENT**

136.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully alleged herein.

137.    Plaintiffs and the Class conferred a monetary benefit on Syniverse in the form of monies or fees paid for services from Syniverse. Syniverse had knowledge of this benefit when it

accepted the money from Plaintiffs and the Class. The monies or fees paid by Plaintiffs and the Class were supposed to be used by Syniverse, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs and the Class.

138. Syniverse failed to provide reasonable security, safeguards, and protections to the personal data of Plaintiffs and the Class, which resulted in Plaintiffs and the Class overpaying Syniverse's customers for the services they purchased.

139. Syniverse failed to disclose to Plaintiffs and the Class that its safeguards and security measures were inadequate to safeguard the PII of Plaintiffs and the Class against theft.

140. Under principles of equity and good conscience, Syniverse should not be permitted to retain the money belonging to Plaintiffs and the Class because Syniverse failed to provide adequate safeguards and security measures to protect the PII of Plaintiffs and the Class, who paid for such measures but did not receive them.

141. Syniverse wrongfully accepted and retained these benefits to the detriment of Plaintiffs and the Class.

142. Syniverse's enrichment at the expense of Plaintiffs and the Class is and was unjust.

143. As a result of Syniverse's wrongful conduct, as alleged above, Plaintiffs and the Class are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Syniverse, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, request judgment against Syniverse and that the Court grant the following:

A.  An Order certifying the Class as defined above, and appointing Plaintiffs and their Counsel to represent the certified Class;

B.  Equitable relief enjoining Syniverse from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.  Equitable relief compelling Syniverse to use appropriate cyber security methods and policies with respect to PII collection, storage, protection, and disposal, and to disclose with specificity to Plaintiffs and Class Members the type of PII divulged;

D.  An award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.  An award of punitive damages;

F.  An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.  Prejudgment interest on all amounts awarded; and

H.  Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: October 6, 2021    Respectfully submitted,


         */s/ Kevin B. Love*
       Kevin B. Love
       Fla. Bar. No. 993948
       Michael E. Criden
       Lindsey C. Grossman
       CRIDEN & LOVE, P.A.
       7301 S.W. 57th Court, Suite 515
       South Miami, FL 33143
       (305) 357-9000
       klove@cridenlove.com
       mcriden@cridenlove.com
       lgrossman@cridenlove.com


       Linda P. Nussbaum
       Bart D. Cohen
       NUSSBAUM LAW GROUP, P.C.
       1211 Avenue of the Americas, 40th Floor
       New York, NY 10036
       (917) 438-9102
       lnussbaum@nussbaumpc.com
       bcohen@nussbaumpc.com

       *Counsel for Plaintiffs and the Proposed Class*